FREDERICK P. ADER AND LEON H. ADER, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF MATHILDE ADER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89873.   Promulgated September 29, 1939.

*M. W. Dobrzensky, Esq., Donald K. Quayle, Esq.,* and *Louis V. Skinner, Esq.,* for the petitioners.
*Arthur L. Murray, Esq.,* for the respondent.

**OPINION.**

HARRON: The gifts in question were made after decedent suffered a fracture of her arm and a lapse into a semicomatose condition, which required that decedent be confined to her bed and undergo treatments for complications of her diabetic condition. The illness brought on by the fracture was the first one of any seriousness which decedent suffered after it had been discovered that she had diabetes.

Decedent was 81 years old at the dates of the making of the gifts in question. The gifts were made less than three months prior to the date of death.

Section 803 of the Revenue Act of 1932 is applicable. Subsection (c) provides, in part:

* * * Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

The significance of the statutory provision quoted above has been stated to be as follows:

This provision was intended to and does place upon the taxpayer the burden of proving by a fair preponderance of evidence that the transfer within two years of death is not made in contemplation of death. [*Farmers Loan & Trust Co. v. Bowers*, 98 Fed. (2d) 794, 799.]

The statutory presumption is rebuttable, as is the determination of the Commissioner that a gift has been made in contemplation of death. It is necessary, therefore, to determine from the evidence whether the petitioners have proved "by a fair preponderance of evidence" that the gifts were *not* made in contemplation of death.

Whether or not the gifts were made in contemplation of death depends upon decedent's motive in making the gift. It is a difficult matter to determine the motive of a deceased person. In searching for the predominant motive, all the evidence must be considered, including the circumstantial evidence. The tests to be applied have been set forth in *United States* v. *Wells*, 283 U. S. 102, and we apply here the tests and the rule set forth in the *Wells* case

One of petitioners' theories is that the gifts in question were made at the particular dates in 1935 because decedent thought that she would avoid paying a higher gift tax if she made gifts prior to

January 1, 1936, the effective date of amendments to the gift tax law. The evidence shows that decedent stated to her son, Leon, that she wanted to make a gift to him, that she had been intending to make the gift, and that she had finally gotten around to making the gift; that decedent stated only to her son, Frederick, that she wished to make a gift to him before the new gift tax went into effect. But the part of the evidence relating to what decedent said at the time she made the gifts must be considered with other evidence. Taken with the testimony of Leon Ader to the effect that decedent read financial pages of the papers daily, that Leon explained, in July 1935, a bank circular about gift taxes to decedent, that statements in the circular indicated that gifts of a value of $40,000 would be exempt from gift tax, it must be assumed that decedent knew the value of each gift at the date of gift and that decedent knew that the total value of the two gifts was less than $40,000 and that the gifts were, therefore, exempt from gift tax.

It is a fact that section 505 of the Revenue Act of 1932, which was applicable to the year 1935, exempted gifts of a value of $50,000 from the computation of net gifts for tax.

Decedent surely must have learned, prior to making each gift, that she did not have to pay any gift tax. She had her bank make a transfer of the stock certificates into the names of the donees, and she apparently told the bank clerk that she was going to make a gift of the stock. It is reasonable to believe that, since decedent was interested in and knew about gift taxes, and knew the current values of her stocks, and was considered to be a keen business woman (according to testimony of a bank employee), she would have inquired at the bank whether the gifts would be subject to gift tax.

Assuming then that decedent said to one son that she wanted to make the gift to him prior to the effective date of new gift taxes, it does not follow that the statement should be given much weight. In view of the general knowledge of decedent on the matter of gift taxes, which the record shows she had, the statement means very little here, in so far as it is relied upon to reveal a predominant motive in the making of one or both of the gifts. It is noted that decedent did not refer to the effect of new gift taxes when she made the gift to Leon.

We, therefore, attach little weight to the reference to gift tax made by decedent at the time she made the gift to Frederick.

Another of petitioners' theories about the motive of decedent in making the gift is that decedent in 1935 was putting into execution an intent she had entertained for about nine years to give to each son a part of the estate that she had inherited from her deceased husband. The evidence shows that decedent's expressions of an intent to make gifts to her sons, in 1925 and in subsequent years,

were vague. The intent of actually making the gifts was vague. Decedent stated, as far back as 1925, that all the property would go to the two sons when she died and that decedent wanted to keep enough to be sure that she would be well provided for. In May 1935 decedent indicated that she wanted her net assets to amount to at least $100,000, and that she was not going to give any of her property to her sons until there should be a "substantial amount over $100,000", and that at such time decedent was going to give the excess above $100,000 to her sons.

Decedent did not carry out any intent to make gifts to her sons during the period between 1925 and 1935, when the value of her assets was as high as $175,000 and $125,000. As far as the record shows, decedent did not make any gifts to her sons during the above stated period. She was not in the habit of making gifts to her sons. She was a frugal person and apparently was much interested in the values of her assets.

Therefore, little weight can be given to the indefinite expressions made by decedent on a few occasions to the effect that she intended making gifts to her sons. In 1932 decedent executed her last will. In the will she gave all of her estate, above bequests totaling $10,000, to her two sons. There is no evidence to show that in 1932 decedent had any definite intention of making any *inter vivos* gifts to her sons.

We turn, then, to consideration of the circumstances under which decedent made the gifts in 1935. (a) The decedent's physical condition had been bad within five months prior to making the gifts. In February decedent was ill, confined to bed, and, for a short time, was in a semicomatose condition. That was the first instance of any complications from diabetes. It is reasonable to believe that decedent knew that she had been in a semicomatose condition, and that this was a complication of the diabetic condition. (b) Decedent, for reasons unknown, in August 1935 departed from her express policy to not make any gifts while her assets were worth not in excess of $100,000, i. e., in August 1935 her assets were not worth a "substantial amount over $100,000." She decided, for reasons not known, to make gifts to her sons, regardless of lack of increase in values of her assets. (c) The evidence does not show that either Leon or Frederick was financially in need of any assistance at the dates the gifts were made. (d) The gifts were made a short time after decedent attained the age of 81 years. She became 81 years of age on August 18, 1935. It is not outside the realm of the possible that decedent believed that she was approaching the late hours of the evening of her life.

The evidence here is neutral. It does not reveal any positive state of mind of the decedent, as of the date of the gifts in 1935, that decedent believed that she had long to live, or that she believed that she was soon to die. The two theories presented by petitioners as to

the motives behind the making of the gifts do not stand up well under analysis. In fact, the evidence which is presented weakens, rather than strengthens, the theories. Stripped to clear facts, the situation is simply that an aged woman, a short time after she had suffered a broken arm and a complication of a disease which is seldom curable, made gifts which in value represented about one-fourth of her holdings in securities. There has not been presented a "fair preponderance of evidence" to prove that the gifts were *not* made in contemplation of death. It must be concluded that the gifts, substantial in amount and made within three months of the date of death, were made in contemplation of death, under the statutory presumption contained in section 803 (c), which has not been refuted. It is so held, and respondent's determination is sustained. Cf. *Flack* v. *Holtegel*, 93 Fed. (2d) 512; *Purvin* v. *Commissioner*, 96 Fed. (2d) 929; *Updike* v. *Commissioner*, 88 Fed. (2d) 807; *Hunter* v. *United States*, 14 Fed. Supp. 523.

*Decision will be entered for the respondent.*